09-2613-cv
Peter F. Gaito Architecture, LLC v. Simone Development Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

—————————

August Term, 2009

(Argued: February 1, 2010                    Decided: April 7, 2010)

Docket No. 09-2613-cv

—————————

PETER F. GAITO ARCHITECTURE, LLC, doing business as PETER F. GAITO AND ASSOCIATES,
PETER F. GAITO,

*Plaintiffs-Appellants*,

—v.—

SIMONE DEVELOPMENT CORP., SIMONE CHURCH STREET, LLC, JOSEPH SIMONE,
THOMAS METALLO, SACCARDI & SCHIFF, INC., TNS DEVELOPMENT GROUP, LTD.,
SLCE ARCHITECTS, LLP,[*]

*Defendants-Appellees*.

—————————

B e f o r e:

KATZMANN AND LYNCH, *Circuit Judges*, CHIN, *District Judge*.[**]

—————————

Appeal from a judgment of the United States District Court for the Southern District of
New York (Conner, *J.*), entered May 29, 2009, granting Defendants-Appellees' motion to
dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and dismissing Plaintiffs-

---

[*] The Clerk of the Court is directed to amend the official caption as set forth above.

[**] The Honorable Denny Chin, United States District Judge for the Southern District of
New York, sitting by designation.

Appellants' copyright infringement claim with prejudice and New York State claims without prejudice. We hold that the district court properly considered the question of non-infringement on defendants' motion to dismiss, and did not err in concluding that plaintiffs' Amended Complaint — together with those documents incorporated therein — fails to adequately allege substantial similarity between defendants' work and the protectible elements of plaintiffs'. We affirm the judgment of the district court.

—————————

AUSTIN GRAFF (Robert S. Nayberg, *on the brief*), The Scher Law Firm, LLP, Carle Place, N.Y., *for Plaintiffs-Appellants*.

PHILIP M. HALPERN, Collier, Halpern, Newberg, Nolletti & Bock, LLP, White Plains, N.Y., *for Defendants-Appellees Simone Development Corp., Simone Church Street, LLC, Joseph Simone, Thomas Metallo, TNS Development Group, Ltd.*

CHRISTOPHER A. ALBANESE, Milber, Makris, Plousadis & Seiden, LLP, White Plains, N.Y., *for Defendant-Appellee SLCE Architects, LLP*.

KENNETH MCLELLAN, Winget, Spadafora & Schwartzberg, LLP, New York, N.Y., *for Defendant-Appellee Saccardi & Schiff, Inc.*

—————————

KATZMANN, *Circuit Judge*:

This case calls upon us in principal part to determine whether a district court may consider the question of non-infringement in a copyright action on a Rule 12(b)(6) motion to dismiss. We hold that, under the circumstances of this case, the district court properly determined non-infringement as a matter of law, and did not err in concluding that plaintiffs' Amended Complaint — together with those documents incorporated therein — fails to adequately allege substantial similarity between defendants' work and the protectible elements of plaintiffs'. We therefore affirm the judgment of the district court.

2

**I.**

The following facts are derived from the allegations set forth in plaintiffs' Amended Complaint ("Am. Compl."), together with those "documents attached to the complaint as an exhibit or incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

In August 2004, the City of New Rochelle issued a Request for Development Proposals ("RFP"), "seeking to identify a real estate development team for the mixed-use development" of a 178-acre parcel of land at Church and Division Streets in downtown New Rochelle ("the Church Street Project"). Am. Compl. Ex. B. Plaintiff Peter F. Gaito (an architect and principal of plaintiff Peter F. Gaito Architecture, LLC d/b/a Peter F. Gaito and Associates ("Gaito Architecture")), and defendant Joseph Simone (the president of defendant Simone Development Corporation ("SDC")), agreed to jointly submit a proposal for the Church Street Project in response to the RFP. *Id.* ¶¶ 21-22. Gaito and Gaito Architecture were to design and draft architectural plans for the project, and Simone was to secure financing for the project, with the assistance of defendants Thomas Metallo and TNS Development Group Ltd. ("TNS"). Based on the parties' agreement, plaintiffs "proceeded to draft architectural plans which included all of the design contents, concepts, zoning information and statistics regarding the proposal to be made to the City." *Id.* ¶ 32.

On November 1, 2004, plaintiffs, together with defendants Simone, SDC, Metallo, and TNS, submitted a completed design proposal (in the name of SDC) to New Rochelle for its approval. Generally speaking, the proposal consisted of plans for a residential high-rise tower,

retail space at the base of the tower, a new pedestrian plaza, a public park, and an aboveground parking garage. On March 11, 2005, New Rochelle awarded the Church Street Project to the group for an estimated price of $175 million. Between March and June 2005, plaintiffs prepared various schematics for the Church Street Project, and on April 5, 2005, Gaito registered plaintiffs' designs for the project with the United States Copyright Office. Based on plaintiffs' designs, defendant Simone Church Street LLC (of which Simone and Metallo are members) "entered into a Memorandum of Understanding with [New Rochelle] as the developer for the [Church Street] Project." *Id.* ¶ 81.

In approximately June 2005, however, a dispute arose between plaintiffs and Simone and SDC concerning plaintiffs' compensation for the project. Because of that dispute, Simone, SDC, Simone Church Street LLC, Metallo, and TNS ("the Simone Defendants") terminated their relationship with plaintiffs, and instead retained the services of defendants SLCE Architects, LLP ("SLCE"), an architectural and planning firm, and Saccardi & Schiff, Inc., a planning firm, to continue the Church Street Project. The thrust of plaintiffs' Amended Complaint is that the defendants thereafter unlawfully used plaintiffs' copyrighted designs for the Church Street Project without plaintiffs' authorization, and that SLCE developed a "re-design" for the project based in large part on plaintiffs' designs.

The Amended Complaint identifies 35 alleged similarities between plaintiffs' designs for the Church Street Project and SLCE's re-design. They include similarities as to location (such as the placement of a new park, parking garage, public plaza, "plaza connection," "elevator stair entry tower," and "public landscaped open space"); similarities as to certain features and functions (such as the inclusion of a new parking garage, a "landscaped street level plaza," "on

4

site parking for both residential and retail use," a water feature, public art, active retail space at the base of a residential tower, boutique shops with "the flexibility for a potential single larger tenant," "architecture that was light, airy, transparent, made of glass with hints of traditional materials," a tower with a "slender profile," balconies for the residential units, a parking garage with a pre-cast masonry facade, as well as certain similarities with respect to the orientation of the project); and similarities as to parameters (such as a floor-area-ratio of 5.5, a parking garage with 850 parking spaces, retail space of 44,000 square feet, and professional office space of 2,500 square feet). *Id.* ¶¶ 131-204. Plaintiffs' designs and SLCE's re-designs are attached to the Amended Complaint as Exhibits C and N.

Based on the foregoing allegations, plaintiffs commenced the instant action, alleging violations of the Copyright Act, 17 U.S.C. § 101 *et seq.*, and asserting claims for *quantum meruit* and unjust enrichment under New York State law. On November 19, 2008, defendants moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6), principally arguing that, even assuming defendants had access to plaintiffs' designs, there is no substantial similarity between the protectible elements of those designs and SLCE's re-designs.

By Opinion and Order dated May 22, 2009 ("District Court Opinion"), the district court granted defendants' motion. Because the district court assumed, for purposes of defendants' motion, "that actual copying by defendants occurred," the district court primarily focused on the question of "whether substantial similarity exists between [defendants'] re-design and the [protectible] elements of plaintiffs' design." District Court Opinion at 8. With respect to that question, the district court compared the various features and design elements of the "predominant" high-rise building in each design, and concluded that "[t]he overall visual

5

impressions of the two designs are entirely different," and that "[n]o reasonable juror would be disposed to . . . regard their aesthetic appeal as the same." *Id.* at 9 (internal quotation marks omitted). With respect to the various specific similarities identified by plaintiffs, the district court concluded that such "features are common to countless other urban high-rise residential developments," and thus amounted to mere "abstract ideas or concepts" that are not protected under the Copyright Act. *Id.* at 10. Based on this analysis, the district court dismissed plaintiffs' copyright infringement claim, concluding that there was no substantial similarity between defendants' re-design and the protectible elements of plaintiffs' design. *Id.* at 12. With no independent federal claim for relief, the district court declined to exercise supplemental jurisdiction over plaintiffs' state law claims, and dismissed those claims without prejudice. *Id.* The district court entered final judgment on May 29, 2009, and the instant appeal followed.

## II.

We review *de novo* a district court's dismissal of a complaint for failure to state a claim upon which relief can be granted, *Maloney v. Soc. Sec. Admin.*, 517 F.3d 70, 74 (2d Cir. 2008), "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.

6

As a threshold matter, the Simone Defendants contend that this Court lacks jurisdiction to hear plaintiffs' appeal because Peter Gaito, the holder of the copyrighted designs, did not file a proper notice of appeal, and because both plaintiffs failed to appeal from the "final decision" in this case. Neither argument merits extended discussion.

Broadly stated, we find no defect in either the notice or amended notice of appeal filed in this case. It is undisputed that the district court entered final judgment on May 29, 2009, plaintiff Gaito Architecture filed an original notice of appeal on June 17, 2009, and Peter Gaito, together with Gaito Architecture, filed an amended notice of appeal on June 29, 2009. Both of these notices were timely under Federal Rule of Appellate Procedure 4, because they were filed "within 30 days after the judgment or order appealed from [was] entered." Fed. R. App. P. 4(a)(1)(A). The amended notice likewise complied with Rule 3's requirement that a notice of appeal specify the "parties taking the appeal," "designate the judgment, order, or part thereof being appealed," and "name the court to which the appeal is taken." Fed. R. App. P. 3(c)(1).

The Simone Defendants nevertheless submit that amended notices of appeal are not permitted under the Federal Rules of Appellate Procedure or under this Court's local rules, and that Gaito's amended notice thus should be considered a nullity. The Simone Defendants cite no authority — nor are we aware of any — that supports this proposition, however, and nothing in the Federal Rules or our local rules forbids the filing of an amended notice of appeal within the time limits set forth by Rule 4. Indeed, the filing of a subsequent notice of appeal by a party not named in the original notice is expressly contemplated by Rule 4(a)(3), which provides that "[i]f one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed . . . ." Fed. R. App. P. 4(a)(3). To the extent

7

that the Simone Defendants take issue with the labeling of plaintiffs' notice as an "Amended Notice of Appeal," that argument is directly foreclosed by Rule 3(c)(4), which explicitly provides that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal . . . ." Fed. R. App. P. 3(c)(4).

The Simone Defendants also argue that plaintiffs fail to appeal from the "final decision" in this case (namely, the May 29, 2009 judgment), but instead from the district court's May 22 Opinion and Order, thus depriving us of jurisdiction to hear plaintiffs' appeal. To be sure, plaintiffs' amended notice of appeal indicates that they are appealing from "the May 22, 2009 'Opinion and Order . . . entered in this Action on the 28th day of May 2009." Rule 3(c), however, expressly provides that an appeal may be taken from an "order" of the district court. The district court's order here disposed of all outstanding claims in this action, and that order became final upon the issuance of a final judgment on May 29, 2009. There can thus be no question that plaintiffs are appealing from a "final decision" of a United States district court, thereby satisfying the necessary predicate for invoking our jurisdiction under 28 U.S.C. § 1291. *See Henrietta D. v. Giuliani*, 246 F.3d 176, 180 (2d Cir. 2001) ("A decision is final for purposes of § 1291 if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (internal quotation marks omitted)). Moreover, given that the district court's May 22 Opinion and Order forms the sole basis for the arguments raised on appeal, the amended notice of appeal unequivocally gave notice of plaintiffs' intent to appeal from that decision and the ensuing final judgment. *See New Phone Co. v. City of New York*, 498 F.3d 127, 131 (2d Cir. 2007) (per curiam) (noting that we have jurisdiction to review a district court's decision so long as "the intent to appeal from that decision is clear on the face of, or can be inferred from, the

8

notice[] of appeal").   In such circumstances, and given that we "construe notices of appeal liberally, taking the parties' intentions into account," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995), we see no defect in plaintiffs' amended notice of appeal.

## IV.

In order to establish a claim of copyright infringement, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (internal quotation marks and emphasis omitted).  Here, for purposes of defendants' motion to dismiss, the district court assumed (as do we) that actual copying by defendants occurred. Accordingly, the principal issue addressed by the district court and raised in this appeal is whether a substantial similarity exists between defendants' designs for the Church Street Project and the protectible elements of plaintiffs'.  We must first, however, consider whether it was proper for the district court to make a determination as to substantial similarity on a Rule 12(b)(6) motion to dismiss, a question that this Circuit has not directly addressed.

## A.

At the outset, we acknowledge that "[t]he test for infringement of a copyright is of necessity vague." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).  Indeed, "[t]he determination of the extent of similarity that will constitute a *substantial*, and hence infringing, similarity presents one of the most difficult questions in copyright law, and

9

one that is the least susceptible of helpful generalizations."  4-13 Nimmer on Copyright § 13.03

(2009).   For that reason, and because the question of substantial similarity typically presents an

extremely close question of fact, *Arnstein v. Porter*, 154 F.2d 464, 468-69 (2d Cir. 1946),

questions of non-infringement have traditionally been reserved for the trier of fact.  *See Durham*

*Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980) ("[T]he question of infringement is

generally resolved by the fact-finder's prediction of the probable reaction of a hypothetical

'ordinary observer.'"); *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir.

1980) ("[S]ummary judgment has traditionally been frowned upon in copyright litigation."); *see*

*also Arnstein*, 154 F.2d at 473 ("Surely, then, we have an issue of fact which a jury is peculiarly

fitted to determine.").

The question of substantial similarity is by no means exclusively reserved for resolution

by a jury, however, and we have repeatedly recognized that, in certain circumstances, it is

entirely appropriate for a district court to resolve that question as a matter of law, "either because

the similarity between two works concerns only non-copyrightable elements of the plaintiff's

work, or because no reasonable jury, properly instructed, could find that the two works are

substantially similar." *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)

(internal quotation marks and emphasis omitted).  *See Walker v. Time Life Films, Inc.*, 784 F.2d

44, 48 (2d Cir. 1986) ("[A] district court may determine noninfringement as a matter of law on a

motion for summary judgment either when the similarity concerns only noncopyrightable

elements of [plaintiff's] work, or when no reasonable trier of fact could find the works

substantially similar."); *Durham Indus., Inc.*, 630 F.2d at 918 ("Although the issue of substantial

similarity is clearly a factual one, it was entirely proper for [the district court] to hold that

[defendant-counterclaimant] is not entitled to go to trial on the issue of infringement."); *see also* 3-12 Nimmer on Copyright § 12.10.

These same principles hold true when a defendant raises the question of substantial similarity at the pleadings stage on a motion to dismiss. It is well settled that in ruling on such a motion, a district court may consider "the facts as asserted within the four corners of the complaint" together with "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In copyright infringement actions, "the works themselves supersede and control contrary descriptions of them," *Walker*, 784 F.2d at 52, including "any contrary allegations, conclusions or descriptions of the works contained in the pleadings." 3-12 Nimmer on Copyright § 12.10. *See Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. 1985); *Shipman v. R.K.O. Radio Pictures, Inc.*, 20 F. Supp. 249, 249 (S.D.N.Y. 1937). When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because "what is required is only a visual comparison of the works." *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991).

Thus, where, as here, the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation. If, in making that evaluation, the district court determines that the two works are "not substantially similar as a matter of law," *Kregos v. A.P.*, 3 F.3d 656, 664 (2d Cir. 1993), the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not "plausibly give rise to an entitlement to relief." *Iqbal*,

129 S. Ct. at 1950. *See Wiren v. Shubert Theatre Corp.*, 5 F. Supp. 358, 362 (S.D.N.Y. 1933) ("There seems to be no good reason why where one book is claimed to be an infringement of a copyrighted book, and both books are attached to the bill of complaint and the pleadings permit it, a reading and comparison of the books themselves should not dispose of the claim of infringement when there are no questions of access, originality, or other facts requiring proof.").

This approach is not only consistent with our previous precedents, *see*, *e.g.*, *Shipman v. R.K.O. Radio Pictures, Inc.*, 100 F.2d 533 (2d Cir. 1938), but also with the position taken by many of the district courts in this Circuit. Indeed, "there is ample authority for the proposition that a district court may make [a determination as to substantial similarity] on a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 305 (S.D.N.Y. 2005). *See*, *e.g.*, *Blakeman v. Walt Disney Co.*, 613 F. Supp. 2d 288, 298 (E.D.N.Y. 2009) (explaining that "many courts have, after comparing the works at issue, dismissed infringement claims for failure to state a claim where substantial similarity between the works cannot be found"); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629 n.1, 632 (S.D.N.Y. 2008) (granting Rule 12(b)(6) motion to dismiss and holding that the two works in question, which the court deemed incorporated into the complaint by reference, were not substantially similar); *Adams v. Warner Bros. Pictures Network*, No. 05 Civ. 5211, 2007 U.S. Dist. LEXIS 47448 (E.D.N.Y. June 29, 2007) (same); *Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305 (S.D.N.Y. 2005) (same); *Bell v. Blaze Magazine*, No. 99 Civ. 12342, 2001 U.S. Dist. LEXIS 2783 (S.D.N.Y. Mar. 16, 2001) (same); *Boyle v. Stephens, Inc.*, No. 97 Civ. 1351, 1998 U.S. Dist. LEXIS 1968 (S.D.N.Y. Feb. 25, 1998) (same); *Buckman v. Citicorp*, No. 95 Civ. 0773, 1996 U.S. Dist. LEXIS 891 (S.D.N.Y. Jan. 30, 1996)

(same).

Several of our sister circuits have likewise endorsed the practice of considering the question of substantial similarity on a motion to dismiss. *See*, *e.g.*, *Taylor v. IBM*, No. 02-10391, 54 Fed. Appx. 794, 2002 WL 31845220, at *1 (5th Cir. 2002) (per curiam) (upholding dismissal with prejudice of a copyright infringement claim under Rule 12(b)(6)); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143-44 (8th Cir. 1989) ("The trial judge could properly determine the matter of substantial similarity as a matter of law and did so by granting defendants' motion to dismiss the copyright count on the ground that it failed to state a claim for infringing use."); *Christianson v. W. Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-42 (10th Cir. 2002) ("When a district court considers the original work and the allegedly copyrighted work in deciding a 12(b)(6) motion, the legal effect of the works are determined by the works themselves rather than by allegations in the complaint.").

We are mindful that a motion to dismiss does not involve consideration of whether "a plaintiff will ultimately prevail" on the merits, but instead solely "whether the claimant is entitled to offer evidence" in support of his claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). We also acknowledge that there can be certain instances of alleged copyright infringement where the question of substantial similarity cannot be addressed without the aid of discovery or expert testimony. *See*, *e.g.*, *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992) ("In making its finding on substantial similarity with

13

respect to computer programs, we believe that the trier of fact need not be limited by the strictures of its own lay perspective."). Nothing in this opinion should be read to upset these settled principles, or to indicate that the question of non-infringement is always properly considered at the pleadings stage without the aid of discovery. But where, as here, the district court has before it all that is necessary to make a comparison of the works in question, we see no error in the district court's decision to resolve the question of substantial similarity as a matter of law on a Rule 12(b)(6) motion to dismiss.

**B.**

Having concluded that the district court did not err in considering the question of substantial similarity on defendants' motion to dismiss, we now turn to whether the district court erred in resolving that question in defendants' favor. We review that determination *de novo*, "because credibility is not at stake and all that is required is a visual comparison of the [works] — a task we may perform as well as the district court." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001). *See Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.*, 409 F.2d 1315, 1317 (2d Cir. 1969) ("As we have before us the same record, and as no part of the decision below turned on credibility, we are in as good a position to determine the question as is the district court.").

"The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (quoting *Hamil Am.*, 193 F.3d at 100). In applying the so-called "ordinary

14

observer test," we ask whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (internal quotation marks omitted). On occasion, though, we have noted that when faced with works "that have both protectible and unprotectible elements," our analysis must be "more discerning," *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994), and that we instead "must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar," *Knitwaves, Inc.*, 71 F.3d at 1002 (emphasis omitted).

No matter which test we apply, however, we have disavowed any notion that "we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." *Id.* at 1003; *see Boisson*, 273 F.3d at 272-73. Instead, we are principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003); *see Boisson*, 273 F.3d at 272; *Knitwaves Inc.*, 71 F.3d at 1003, as instructed by our "good eyes and common sense," *Hamil Am.*, 193 F.3d at 102 (alteration omitted). This is so because "the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art — the excerpting, modifying, and arranging of [unprotectible components] . . . — are considered in relation to one another." *Tufenkian Import/Export Ventures, Inc.*, 338 F.3d at 134. Thus, in the end, our inquiry necessarily focuses on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or

15

her work." *Knitwaves Inc.*, 71 F.3d at 1004 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991)).

A *de novo* application of these principles to the works in question here unequivocally demonstrates the utter lack of similarity between the two designs.

Plaintiffs' overall design for the Church Street Project, for instance, consists of not one, but three prominent structures: a 34-story residential tower, a structure containing "proposed retail with residential duplex units above," and an "8-story mixed-use building," all oriented along Church and Division Streets in downtown New Rochelle. Defendants' re-design, by contrast, consists of a single structure comprised of a 42-story residential tower, two-story retail spaces facing Main Street, retail space adjacent to the tower to be occupied by two large retail tenants, and retail or commercial space adjacent to the southeastern end of the project site. While plaintiffs' design includes a series of townhouses, the re-design contains none.

The buildings in both designs are connected by pedestrian plazas, but in different ways. Plaintiffs' design contains a prominent plaza that connected Church and Division Streets, and that leads to the indoor parking facility and a proposed park. Defendants' re-design instead contains a plaza that runs "along the east side of Division Street to the center of the Church/Division Lot with a through connection to Main Street." The new park included in plaintiffs' design sits at the corner of Leroy Place and Division Street, and features two prominent circular designs with a diagonal walkway. By contrast, the one in defendants' re-design is a U-shaped park that wraps around the new parking garage and faces Church Street, Leroy Place, and Division Street.

Finally, and critically, it is patent that the overall visual impressions of the two designs

16

are entirely different.  Indeed, nothing in the various schematics and plans indicates any similarities between the specific aesthetic choices embodied in the respective designs.

To be sure, both designs set forth similar ideas and concepts relating to the design of a mixed-use development in downtown New Rochelle centered around a prominent residential tower.  Upon examining the "total concept and feel" of the designs with "good eyes and common sense," *Hamil Am.*, 193 F.3d at 102 (alteration omitted), however, we confidently conclude that no "average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  *Knitwaves Inc.*, 71 F.3d at 1001.

### C.

In urging us to conclude that the works in question here are substantially similar, plaintiffs rely on the numerous alleged similarities between the two designs that are set forth in the Amended Complaint.  As noted above, these similarities range from the inclusion and placement of certain features in the Church Street Project to the specific parameters and specifications for the project.

In a copyright action, however, the similarity between two works must concern the expression of ideas, not the ideas themselves.  *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90-91 (2d Cir. 1976); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930).  *See* 17 U.S.C. § 102(b).  This principle, known as the "idea/expression dichotomy," "assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work."  *Feist*, 499 U.S. at 349-50.  Where, as here, plaintiffs point to a variety of alleged similarities between two works, we are required to

17

determine whether any alleged "similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking." *Tufenkian Import/Export Ventures, Inc.*, 338 F.3d at 134-35.

This Court considered the idea/expression dichotomy with respect to architectural designs in *Attia v. Society of the New York Hospital*, 201 F.3d 50 (2d Cir. 1999). In *Attia*, plaintiff's complaint "alleged that Defendants copied Plaintiff's drawings for the renovation of New York Hospital . . . and falsely designated themselves as the source of his design for the renovation." *Id.* at 51. Plaintiff argued, as plaintiffs do here, that defendants' "schematic design drawings misappropriated the 'unique combination of design elements' inherent in his overall 'design solution,'" including "'at least twenty . . . [individual] design elements' featured in his depictions." *Id.* at 53. The district court granted defendants' summary judgment motion, concluding that, after discounting those features in plaintiff's design that merely "embrace what are indisputably basic features of hospital operation and logistics," plaintiff's work merely consisted of "an unrealized concept or idea" that was not copyrightable. *Id.*

On appeal, we affirmed the district court's grant of defendants' summary judgment motion. As a preliminary matter, we emphasized that "to the extent that [architectural] plans include generalized notions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on, these are 'ideas' that may be taken and utilized by a successor without violating the copyright of the original 'author' or designer." *Id.* at 55. While acknowledging the numerous "similarities between Plaintiff's drawings and Defendants' architectural plans," we concluded that "there was no infringement, because the similarities [did] not go beyond the concepts and ideas contained in

18

Plaintiffs' drawings." *Id.* at 53. In so holding, we emphasized that upon considering the various

alleged similarities between the two works, it was clear that

> no more was taken than ideas and concepts. The placement of a new building, the
> use of truss technology to transfer weight, the alignment of floor heights and
> corridors, the creation of a continuous traffic loop through the hospital complex,
> the placement of emergency services and ambulance parking along that roadway,
> the location of a pedestrian area and of mechanical equipment, the arrangement of
> space on particular floors — these are no more than rough ideas of general nature.

*Id.* at 56. Thus, because plaintiff's architectural plans "consisted only of generalized ideas and

concepts pertaining to the placement of elements, traffic flow, and engineering strategies," rather

than any "protected expression," we concluded that no copyright infringement had occurred. *Id.*

at 57.

Here, as in *Attia*, after carefully considering the various alleged similarities between

plaintiffs' design and defendants' re-design, it is clear "that no more was taken than ideas and

concepts." *Id.* at 56. As the district court correctly observed, the various components and

features that defendants allegedly misappropriated are generalized concepts and ideas that are

"common to countless other urban high-rise residential developments." District Court Opinion

at 10. Indeed, were we to permit plaintiffs to seek recovery for the alleged infringement of, for

instance, "architecture that was light, airy, transparent, made of glass with hints of traditional

materials," we would directly contravene the underlying goal of copyright to "encourage[] others

to build freely upon the ideas and information conveyed by a work." *Feist*, 499 U.S. at 350.

With respect to the placement of those various elements and features, the allegedly copied matter

solely consists of "generalized notions of where to place functional elements," notions that we

explicitly found to be unprotectible in *Attia*. 201 F.3d at 55. Finally, to the extent that plaintiffs

seek to recover for the alleged infringement of certain design parameters set forth in their

designs, such parameters, even when viewed in the aggregate, do not represent plaintiffs' "personal expression," but instead mere "'ideas' that may be taken and utilized by a successor without violating the copyright of the original 'author' or designer." *Id.* Nor does the inclusion of these parameters in a Memorandum of Understanding somehow transform them into protectible expression under the copyright laws.

Plaintiffs seek to distinguish *Attia*, and argue that their designs do not consist of "rough ideas of general nature," *id.* at 56, but instead of "specific expression and realization of those ideas, with the consequence that copying could constitute an infringement of copyright." *Sparaco v. Lawler, Matusky, Skelly, Eng'rs LLP*, 303 F.3d 460, 469 (2d Cir. 2002); *see* Pl. Reply Br. at 12. The central question presented here, however, is not whether plaintiffs' designs as a whole are entitled to copyright protection. Instead, we are called upon to determine whether defendants misappropriated the protectible elements of those designs, *viz.*, plaintiffs' specific expression of how the Church Street Project would be designed. *See Tufenkian Import/Export Ventures, Inc.*, 338 F.3d at 135 ("[C]opying is not unlawful if what was copied from the allegedly infringed work was not protected . . . ."). In other words, notwithstanding the degree of specificity with which plaintiffs' designs depict the Church Street Project, it cannot be said that defendants misappropriated plaintiffs' specific "personal expression" of the project, but instead merely used the unprotectible concepts and ideas contained in plaintiffs' designs. *Attia*, 201 F.3d at 55.

In short, because plaintiffs have failed to allege that "a substantial similarity exists between [defendants'] work and the protectible elements of [plaintiffs']," *Hamil Am.*, 193 F.3d at 99, the district court properly dismissed plaintiffs' federal copyright claim. And in the absence

of any federal claim for relief, we likewise see no error in the district court's decision to decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claims. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state law claims should be dismissed as well.").

## V.

We have considered all of plaintiffs' remaining arguments on this appeal and find them to be without merit. For all of the foregoing reasons, plaintiffs' Amended Complaint does not "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted). We therefore affirm the judgment of the district court.