Yaina WILLIAMS, Plaintiff,

v.

A & E TELEVISION NETWORKS, Lifetime Entertainment Services, FYI Television Network, and John Doe, Defendants.

No. 14–cv–9893 (PKC).

United States District Court, S.D. New York.

Signed Aug. 13, 2015.

Tonya Shy, Granville/Shy, LLC, James Walker, Jr., Walker & Associates, LLP, Atlanta, GA, for Plaintiff.

Bradley Howard Ellis, Amanda Victoria Lopez, Lauren Marie De Lilly, Sidley Austin LLP, Los Angeles, CA, David William Denton, Jr., Sidley Austin LLP, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Plaintiff Yaina Williams brings this action against defendants A & E Television Networks ("A & E"), Lifetime Entertainment Services ("Lifetime"), FYI Television Network ("FYI"), and John Doe for copyright infringement, contributory copyright infringement, and vicarious copyright infringement arising out defendants' development and airing of the television series entitled "Married at First Sight." Plaintiff alleges that defendants infringed her copyright in a treatment for a marriage-themed reality show entitled "Married at 1st Sight." Plaintiff also seeks declaratory relief enjoining defendants from infringing on her copyright in "Married at 1st Sight" (the "Treatment"). Defendants now move to dismiss the Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P. For the reasons explained below, defendants' motion to dismiss is granted.

## BACKGROUND

The following facts are taken from the Complaint and documents incorporated by reference therein.[1] On December 19, 2011, plaintiff registered her treatment for a reality television show entitled "Married at 1st Sight" (the "Treatment") with the Copyright Office. (Compl't ¶¶ 1–2; Compl't Ex. 1.) Also that day, plaintiff uploaded the Treatment to a website entitled "TV Writer's Vault." (Compl't ¶¶ 2, 18.) The website "allows writers to pitch and sell their reality TV show ideas or other television projects to producers." (Pl. Mem. at 2.) In February 2012, plaintiff received a notification from "TV Writers Vault" that Lewis Goldstein, an executive from or affiliated with Lifetime, had downloaded the Treatment. (Compl't ¶¶ 3, 18.)

1. The defendants have supplied the Court with DVDs of Season 1 of FYI's "Married at First Sight," which have been filed with this Court as Exhibit A to the Affidavit of Sean Ryan. (Docket # 34.) Plaintiff does not dispute the authenticity of the content of the DVDs. The Complaint refers to twelve episodes of the so-called "Infringing Series" and those episodes are described in the body of the Complaint. The context of the series in those twelve episodes may be properly considered on this motion. *See Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir.2002) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference") (citation and internal quotation marks omitted). Defendants submitted a thirteenth episode that aired with Season 1, episode 100 entitled "Casting Special," which the Court has not considered on this motion. Defendants also submitted DVDs of four episodes of the series "Married at First Sight: The First Year," which the Court has not considered on this motion.

Plaintiff had no further contact with Goldstein or Lifetime. (Compl't ¶ 19.)

Plaintiff's Treatment describes a reality television show in which two contestants marry each other after one, twelve-hour long date with the goal of remaining married for six months in order to receive various prizes. The Treatment's logline reads "It's 'Dharma & Greg' meets 'Platinum Weddings[.]' One lucky couple wins a dream wedding, honeymoon, a dream house, and $250,000. The catch is, they have to get married after their first blind date and live together for at least 6 months." (Compl't Ex. 2.) The Treatment then provides a more detailed synopsis of the series, which purportedly attempts to answer the age-old question, "Does love at first sight exist?" (Id.)

In the first three episodes of the series as described in the Treatment, three single women and three single men would move into a "big dream house" and each man would go on a twelve hour blind date with one of the women while a "male and female matchmaking/date coaching team ... judge the contestants and couple." (Id.) At the end of each of the first three proposed episodes, the television audience would be invited to vote for their favorite couple who would then have the opportunity to get married and potentially win the grand prize consisting of a "dream house," "dream wedding," honeymoon, and $250,000. (Id.) The winning couple, determined by a combination of audience and matchmaker votes, would be announced in the fourth episode. (Id.) In the following few suggested episodes, the winning couple would meet with a "celebrity wedding planner" to plan their wedding within two to three weeks, and the couple's family and friends are introduced. (Id.) If the winning couple do not marry and "fulfill their duties" then the runner-up couple would have an opportunity to get married and win the prizes. (Id.) Subsequently, eight

to ten additional episodes would air in the proposed series, documenting the couples on their honeymoon, living together, and partaking in various "exciting activities" and "therapeutic tasks" organized by the show. (Id.)

The Treatment also includes "contest rules and eligibility" for potential contestants (Id.) Contestants must be single men and women, ages 30–49, who have never been married and have no children. (Id.) In order to win, the couple must marry after just one date, attend at least one premarital counseling session, meet with a marriage counselor twice a week after the wedding, and live together for six months. (Id.) The Treatment outlines "potential conflicts and drama" that may arise. (Id.)

In July 2014, FYI promoted and subsequently aired the television series "Married at First Sight." (Compl't ¶ 20.) FYI and Lifetime are corporations affiliated with A & E Television Network. (Compl't ¶¶ 7–9.) "Married at First Sight" is a television docu-series that follows the experiences of three couples, chosen and matched by a team of four experts, through their first six weeks of marriage. Each couple meets each other for the first time at the marriage ceremony and is then legally married. At the end of six weeks, the couples choose to either stay married or obtain a divorce. (Sean Ryan Aff. Ex. A.)

Plaintiff filed the complaint in this action on December 12, 2014. (Docket # 1.) She alleges that defendants had access to the Treatment and obtained actual copies of the Treatment from the TV Writers Vault. Plaintiff also alleges that "Married at First Sight" and "the various elements and episodes thereof contain the same plot, themes, mood, setting, pace characters, sequence of events, and other concrete elements" as the Treatment and, therefore, is "substantially and strikingly similar to the

[Treatment]." (Compl't ¶¶ 50–51.) Because defendants continue to copy and distribute plaintiff's copyrighted Treatment, plaintiff asserts that defendants have infringed and continue to infringe on plaintiff's rights under the federal Copyright Act, 17 U.S.C. § 101 *et seq.* (Compl't ¶¶ 53–56.) Plaintiff also alleges claims of contributory copyright infringement and vicarious copyright infringement against each defendant and seeks declaratory relief enjoining defendants from infringing on plaintiff's copyright. (Compl't ¶¶ 43–46, 62–68.)

## RULE 12(b)(6) STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them. *Id.* Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937. In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (per curiam).

"[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint

relies heavily upon its terms and effect, which renders the document integral to the complaint." *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (citations and internal quotation marks omitted)). As noted, the DVDs of the 12 episodes of the first season of FYI's "Married at First Sight" are properly considered on the motion because the Complaint extensively describes the content of the series. (Compl't ¶¶ 21–42.)

■ "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir.2010) (internal citations and quotation marks omitted).

## DISCUSSION

### I. Copyright Infringement

■ To establish an infringement of a copyright, a plaintiff must show both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *accord Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995). This requires that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protect[a]ble elements of plaintiff's." *Peter F. Gaito Arch.,* 602 F.3d at 63 (internal quotation marks and citation omitted).

■ "It is a fundamental principle of our copyright doctrine that ideas, concepts, and processes are not protected from copying." *Attia v. Society of the New*

*York Hosp.*, 201 F.3d 50, 54 (2d Cir.1999). "*[S]cènes à faire*, sequences of events or features that necessarily result from the choice of a setting or situation do not enjoy copyright protection and are excluded from consideration when deciding whether or not two works are substantially similar." *Rodriguez v. Heidi Klum Co., LLC,*. No. 05 Civ. 10218(LAP), 2008 WL 4449416 (S.D.N.Y. Sept. 30, 2008) (citation omitted).

A district court may resolve the issue of substantial similarity as a matter of law on a motion to dismiss. *Peter F. Gaito Arch.*, 602 F.3d at 65 ("Thus, where, as here, the works in question are attached to the plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation."). "If, in making that evaluation, the district court determines that the two works are 'not substantially similar as a matter of law,' *Kregos v. A.P.*, 3 F.3d 656, 664 (2d Cir.1993), the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief." *Peter F. Gaito Arch.*, 602 F.3d at 64 (citation and internal quotation marks omitted).

In the Second Circuit, "[t]he standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same.' " *Id.* at 66 (citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir.2001) (citation omitted)). "In applying the so-called 'ordinary observer test,' " the Court asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* (internal quotation marks and citation omitted).

The "ordinary observer test" is applied in copyright cases involving reality television programs. *See, e.g., Latimore v. NBC Universal Television Studio*, 480 Fed.Appx. 649 (2d Cir.2012) (summary order); *Castorina v. Spike Cable Networks, Inc.*, 784 F.Supp.2d 107 (E.D.N.Y.2011); *Pino v. Viacom, Inc.*, Civil No. 07–3313(AET), 2008 WL 704386 (D.N.J. Mar. 4, 2008). When a work contains both protectable and unprotectable components, the Court " 'must attempt to extract the unprotect[a]ble elements from … consideration and ask whether the protect[a]ble elements, standing alone, are substantially similar[.]' " *Peter F. Arch.*, 602 F.3d at 66 (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir.1995) (emphasis omitted)). When considering works that have both protectable and unprotectable elements, the Court is not required to "dissect" the works and only consider those elements that are copyrightable; rather, the Court is "principally guided by comparing the contested [work]'s total concept and overall feel with that of the allegedly infringed work." *Peter F. Gaito Arch.*, 602 F.3d at 66.

"[A]lthough stock concepts and '*scènes à faire*' are 'unprotectable' in and of themselves, *see Lapine v. Seinfeld*, 375 Fed.Appx. 81, 83 (2d Cir.2010) (Summary Order), their 'selection, coordination, and arrangement,' can be protectable, to the extent that it reflects a particular expression of ideas." *Castorina*, 784 F.Supp.2d at 111 (citing *Peter F. Gaito Arch.*, 602 F.3d at 67). Thus, "if a work copies the original way in which the author has selected, coordinated, and arranged these unprotectable elements to such an extent that the copying work is substantially similar to the 'expression of ideas' and 'total concept and overall feel' of the copied work, infringement can occur." *Id.* (citing

*Peter F. Gaito Arch.*, 602 F.3d at 66–67 (internal quotation marks omitted)).

## II. Analysis of Plaintiff's Copyright Infringement Claim

■ Defendants argue that the Treatment is not subject to copyright protection because it consists of nothing but "common stock ideas" and unoriginal *scènes à faire* that do not rise to the level of original protectable expression. Defendants also argue that, even if some elements of the Treatment are protectable, there is no substantial similarity between those elements and "Married at First Sight." Having considered the allegations set forth in the Complaint, the parties' memoranda, and the works themselves, the Court concludes that the Treatment consists predominately of unprotectable *scènes à faire*. As a matter of law, the total concept and overall feel of the Treatment is not substantially similar to that of "Married at First Sight;" therefore, the copyright infringement claim must be dismissed.

Plaintiff does not own an enforceable copyright in the general idea of a reality show about arranged marriages or marriage between strangers. *See Attia*, 201 F.3d at 54 (2d Cir.1999) ("It is a fundamental principle of our copyright doctrine that ideas, concepts, and processes are not protected from copying."). Rather, "Married at First Sight" infringes on the Treatment "only if it copied the 'original way in which the author has selected, coordinated, and arranged' various elements to such an extent that its 'expression of ideas' and 'total concept and overall feel' was substantially similar" to the Treatment. *Castorina*, 784 F.Supp.2d at 111 (citing *Peter F. Gaito Arch.*, 602 F.3d at 66–67) (internal quotation marks omitted).

■ The Complaint alleges numerous similarities between the Treatment and "Married at First Sight," however, the alleged similarities consist primarily of un-protectable *scènes à faire*. Filmed interactions between contestants and "coaching team[s]" or matchmakers, marital therapist sessions, pre-wedding events, a wedding provided by the show, an "island getaway" honeymoon, an episode featuring the couple moving in together, appearances by and interviews of family members and friends of contestants, and filming of a couple's "everyday life" as they adapt to marriage all certainly stem from the uncopyrightable concept of a reality show about arranged marriages. *See Rodriguez*, No. 05 Civ. 10218(LAP), 2008 WL 4449416 at *5 (S.D.N.Y. Sept. 30, 2008) (noting "the use of a panel of judges composed of fashion industry experts, a design workroom with sewing machines, a specific number of contestants, professional models, hairstylists, make-up artists, weekly episodes and the setting of New York ... all necessarily flow from the uncopyrightable idea of a fashion design reality show") (citing *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir.1996) (finding that electric fences, automated tours, dinosaur nurseries, and uniformed workers are typical *scènes à faire* that flow from the uncopyrightable idea of a dinosaur zoo); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir.1986) (finding that elements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about the work of policemen in the South Bronx and are therefore unprotectable stock concepts)). Activities like grocery shopping, spending time with friends and family, decorating a new home, and visiting an amusement park would necessarily appear in any program documenting a newly married couple's everyday life and are also, therefore, unprotectable *scènes à faire*. Moreover, "dramatic cliffhangers," video clips and interviews of potential contestants who are not featured on the show, creation of online "buzz," and online audience interaction or participation are all

typical elements of a reality show's production and are not protectable. (Compl't ¶¶ 21–42.)

Furthermore, the Treatment does not augment these stock concepts with significant detail or imagination to render the arrangement original. For example, the Treatment offers no specific information regarding the role or characterizations of the matchmakers and date coaching teams beyond those inherent in the role of a matchmaker or counselor. (Compl't Ex. 2.) The lack of specific details outlined in the Treatment "undercuts its protectability, because the [fewer] specifics and detail it contained, the less it uniquely and imaginatively selected, coordinated and arranged the stock elements contained within." *Castorina*, 784 F.Supp.2d at 111–12. (citation omitted). Plaintiff highlights the Treatment's use of the phrase "can love happen at first sight?" and the inclusion of that phrase in promotions for "Married at First Sight," (Compl't ¶ 21). However, this single phrase of doubtful originality does not amount to copyright infringement. "[W]ords, short phrases, titles, and slogans are not subject to copyright, even if they can be trademarked." *Castorina*, 784 F.Supp.2d at 111 (citation and quotation marks omitted).

The Treatment describes specific ways in which the couples could bond on their first date by catering to the personalities of the couples in choosing various date activities, such as visiting an amusement park together. (Compl't ¶ 42; Compl't Ex. 2.) However, pre-marital dates are not elements of "Married at First Sight." Moreover, the "everyday life" activities listed in the Treatment as potential elements of the show do not extend the nature of the element of the treatment beyond mere *scènes à faire* associated with any reality television show that purports to document a person's everyday life, such as grocery shopping. (Compl't ¶ 38; Compl't Ex. 2.)

Nevertheless, having considered the way in which the Treatment has "selected, coordinated, and arranged" these unprotectable elements, *Peter F. Gaito Arch.*, 602 F.3d at 66–67, the overall feel and total concept of the works are significantly dissimilar. The Treatment conceives of a show in which three single women agree to go on a blind date with one of three single men and, if chosen as the winning couple by votes from a "coaching team" and the television audience, subsequently has the option to get married and stay married for six months in hopes of winning an assortment of elaborate grand prizes. (Compl't Ex. 2.) The show follows the couple from their first date through their wedding and first six months of marriage, if the marriage persists to the six month mark. The Treatment focuses on the glamour of a "dream house" and "dream wedding," planned by a "celebrity wedding planner," and highlights the potential for drama and conflict. (*Id.*)

In contrast, "Married at First Sight" is depicted as the documentation of a social experiment in which a team of experts comprised of a clinical psychologist, sexologist, spiritual advisor, and sociologist, through science and research, match three couples to be married at first sight to determine if, at the end of six weeks of marriage, the couples will choose to stay married or obtain a divorce. (Sean Ryan Aff. Ex. A.) There is no "blind date" before the wedding, the wedding is not intended to be especially glamourous, and there are no prizes for any "winning couple". (*Id.*)

The Complaint fails to state a claim upon which relief may be granted because it fails to plausibly allege that "a substantial similarity exists between the defendant[s'] work and the protectable elements of plaintiff's". *Peter F. Gaito Arch.*, 602 F.3d at 63. Although the Treatment and "Married at First Sight" both embody the

idea of a reality show about arranged marriages between strangers, the Treatment does not express the concept in an original manner in which an objective observer could find substantial similarity to "Married at First Sight." The copyright infringement claim is dismissed.

### III. Contributory and Vicarious Copyright Infringement Claims

█ Plaintiff alleges that "each defendant" is liable for contributory copyright infringement and vicarious copyright infringement. (Compl't ¶¶ 62–68.) "[T]here can be no contributory infringement absent actual infringement . . ." and no vicarious infringement absent direct infringement. *Faulkner v. National Geographic Enterprises, Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) (citing *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 693, 706 (2d Cir.1998)). Because plaintiff has not plausibly alleged a claim of direct copyright infringement, her claims of contributory and vicarious copyright infringement must be dismissed. Declaratory relief is also denied.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to close the case.

SO ORDERED.